UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

SKAGWAY JEWELRY CO. LLC, an
Alaska limited liability company; and
INDRESH CHAWLA, an individual,

        Plaintiff,

        v.

WESTMARK HOTELS, INC., an Alaska
corporation; HOLLAND AMERICA
LINE, INC., a Washington corporation,
& WESTMARK HOTELS, INC d/b/a
HAP – ALASKA/YUKON; ROYAL
HYWAY TOURS INC., an Alaska
corporation d/b/a HAP ALASKA-
YUKON; and, DAVID
MUSSELWHITE, an individual, and
"JANE DOE" MUSSELWHITE, in her
marital community property, DAVID
BRENA, an individual, and "JANE
DOE" BRENA, in her marital community
property; ALYESKA REALTY
ADVISORS INC., an Alaska
Corporation; CARLTON SMITH, an
individual, and "JANE DOE" SMITH, in
her marital community property; THE
CARLTON SMITH COMPANY, LLC.,
an Alaska Corporation; RYAN
WILLIAMS, an individual, and "JANE
DOE" WILLIAMS, in her marital

Case No. 15-CV-322-MHP

FIRST AMENDED COMPLAINT
FOR DAMAGES

JURY DEMAND

FIRST AMENDED COMPLAINT FOR
DAMAGES - 1

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 792-5230 ● (206) 452-0655 FAX

1 community property.

2                                   Defendants.

3

4        Plaintiffs Skagway Jewelry Co. LLC and Indresh Chawla and, by and through

5 their attorneys of record, Impact Law Group PLLC, through this First Amended

6 Complaint against Defendants, hereby state and allege as follows:

7                                **I.  PARTIES**

8        1.      Skagway Jewelry Co. LLC ("Skagway") is an Alaska limited liability

9 company and admitted to do business in the State of Alaska, and has met all

10 requirements to maintain this suit.

11       2.      Indresh Chawla is a natural person residing in Saint Thomas, U.S.

12 Virgin Islands and is the Managing Member of Skagway.

13       3.      Holland America Line Inc. ("Holland America") is a Washington

14 corporation with its principal place of business in Seattle, King County, Washington.

15 Upon information and belief, Holland America is the owner, through its wholly owned

16 subsidiary, Westmark Hotels, Inc., of real property that was formally known as the

17 Westmark Inn Skagway Hotel situated in Skagway, Alaska now generally described as

18 follows:  Vacant Commercial Lot at northwest corner of Spring and 2nd Avenue, Lot

19 12, Block 35, Skagway Townsite, Skagway AK (the "Property").

20       4.      Westmark Hotels Inc. ("Westmark") is an Alaska corporation that is

21 licensed to conduct and conducts business in King County, Washington, with a mailing

22 and physical address on file with the State of Alaska, Division of Corporations, as

23 Seattle, King County, Washington.  Upon information and belief, Westmark is a

24

FIRST AMENDED COMPLAINT FOR
DAMAGES - 2

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 792-5230 ● (206) 452-0655 FAX

wholly owned subsidiary of Holland America.

5.    Holland America and Westmark are the owners of and do business under the business name of HAP – Alaska/Yukon ("HAP") in the State of Alaska and, upon information and belief, HAP may be the owner of or have an interest in the Property.

6.    Royal Hyway Tours Inc. ("Royal Hyway") is an Alaska corporation that is licensed to do and does business in King County, Washington under the registered trade names of HAP Alaska-Yukon and Holland America/Princess-Alaska, with a mailing and physical address on file with the State of Alaska, Division of Corporations, as Seattle, King County, Washington.  Upon information and belief, Royal Hyway may be the owner of or have an interest in the Property.

7.    David Musselwhite and "Jane Doe" Musselwhite are a marital community, and residents of King County, Washington.  Upon information and belief, David Musselwhite was at all material times an employee or officer of Holland America, Westmark, HAP, and Royal Hyway.

8.    David Brena and "Jane Doe" Brena are a marital community, and, based upon information and belief, are residents of Skagway, Alaska.  Upon information and belief, David Brena purchased property-- 2nd and Spring Street, (Lot 12, Block 25, Townsite of Skagway, Skagway, AK 99840).

9.    Alyeska Realty Advisors Inc. is an Alaska corporation.    Upon information and belief, Alyeska Realty Advisors Inc. is the owned by David Brena.

10.    Carlton Smith and "Jane Doe" Smith are a marital community, and, based upon information and belief, are residents of Juneau, Alaska.  Upon information

FIRST AMENDED COMPLAINT FOR
DAMAGES - 3

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 792-5230 ● (206) 452-0655 FAX

and belief, Carlton Smith was the licensed mortgage broker for sale of property -- 2nd and Spring Street, (Lot 12, Block 25, Townsite of Skagway, Skagway, AK 99840).

11.  The Carlton Smith Company, LLC, is an Alaska corporation.  Upon information and belief, The Carlton Smith Company, LLC is owned by Carlton Smith.

12.  Ryan Williams and "Jane Doe" Williams are a marital community, and, based upon information and belief, are residents of Juneau, Alaska.  Upon information and belief, Ryan Williams worked for The Carlton Smith Company during the sale transaction pertinent to this case.

## II.  JURISDICTION AND VENUE

13.  Pursuant to 28 U.S.C. § 1343, this Court has jurisdiction to adjudicate cases alleging a violation of 42 U.S.C § 1982.

14.  This Court has personal jurisdiction over <u>certain</u> Defendants because they conduct business and reside in the State of Washington.

15.  This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332in that this is a civil action where the matter in controversy exceeds the sum or value of $75,000 and there is diversity of citizenship between the parties as Mr. Chawla is a citizen of U.S. Virgin Islands, and Defendants maintain principal places of business and/or reside in Washington State.

16.  Venue is proper under 28 U.S.C. § 1391(b) as <u>certain</u> Defendants maintain principal places of business and/or reside in this District.

## III.  GENERAL ALLEGATIONS

17.  Holland America and its wholly owned subsidiary, Westmark, own the Property located at Spring Street and Second Avenue, Lot 12, Block 35, in Skagway, Alaska, which included retail space consisting of 200 square feet located at the south

FIRST AMENDED COMPLAINT FOR
DAMAGES - 4

IMPACT LAW GROUP PLLC
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 792-5230 ● (206) 452-0655 FAX

end of the building on the Property commonly known as the 600 Wing (the "Premises").

18.     On or about May 1, 2004, Westmark, as Landlord, entered into a Lease Agreement with Skagway, through Mr. Chawla, as Tenant, for the rental of retail space at the Premises, as amended by that certain First Amendment and Second Amendment to Lease (collectively referred to hereinafter as the "Lease Agreement").

19.     The term of the Lease Agreement was from May 1, 2004 through September 30, 2012.

20.     The Premises was used by Skagway primarily as a jewelry store catering to tourists visiting Skagway during the summer season.

21.     On March 7, 2012, Jim Sager, General Manager of Westmark and a representative of Holland America, wrote an email to Mr. Chawla informing him that the Premises had been involved in a fire during the previous night.

22.     Mr. Chawla immediately went to the Premises to inspect the damage caused by the fire, which he discovered destroyed everything, including approximately $120,000 of improvements Skagway made to the Premises.

23.     The fire damage precluded Skagway's ability to conduct its business during the 2012 tourist season.

24.     Holland America and Westmark refused to provide any information to Mr. Chawla about the fire at the time it occurred or at any time thereafter.

25.     Paragraph 13(A) of the Lease Agreement provides in pertinent part as follows:

> Damage or Destruction.  If the Premises are damaged or destroyed by fire or any other cause, Landlord shall restore the Premises … as nearly as practicable to their condition immediately prior to such damage or

FIRST AMENDED COMPLAINT FOR
DAMAGES - 5

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 792-5230 ● (206) 452-0655 FAX

destruction.… Notwithstanding any provision of this Section to the contrary, the obligation to restore provided in this Section shall be subject to Landlord's termination rights set for the below.

26. Paragraph 13(B) of the Lease Agreement addresses Defendants' termination rights and provides in pertinent part as follows:

Notwithstanding any of the foregoing provisions of this Section, in the event the Premises shall be destroyed or damaged to such an extent that Landlord deems that it is not economically feasible to restore the same, then Landlord may terminate the term of this lease by giving Tenant thirty (30) days' notice prior to that effect….

27. After the fire destroyed the Premises, Holland America and Westmark did not terminate the Lease Agreement, nor did they provide notice to Skagway or Mr. Chawla that they intended or had any intent to terminate the Lease Agreement.

28. Even after suffering significant loss through no fault of his own, Mr. Chawla wanted to continue operate Skagway's business at the Premises.

29. In August and December 2012, Mr. Chawla wrote to Mr. Sager offering either to erect a temporary structure for Skagway's business for the 2013 tourist season, or to buy the Property.

30. In October 2012, Mr. Chawla met with the regional managers for Holland America and Westmark. He again inquired about their intention with respect to the Premises and the Property. Mr. Chawla specifically informed these managers that Skagway's business and the Premises had suffered significant damage, and that Defendants were not complying with the terms of the Lease Agreement that required the Premises to be restored to its condition immediately before the fire.

31. At the meeting, Mr. Chawla specifically informed these regional managers that he wished to continue to lease the Premises for the 2013 season. The

FIRST AMENDED COMPLAINT FOR
DAMAGES - 6

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 792-5230 ● (206) 452-0655 FAX

managers, as representatives of Holland America and Westmark, assured Mr. Chawla that he would be "taken care of" when Defendants rebuilt the Property. They also assured him that he would have the right of first refusal either to lease or purchase the property. Mr. Chawla was also reassured that he would be able to continue Skagway's business at the Premises in 2013 and years beyond.

32. In May 2013, as the tourist season was starting in Skagway, Mr. Sager wrote to Mr. Chawla, "When can we see you this year?"

33. Despite their representations that the Property and Premises would be rebuilt in time for the 2013 tourist season, Holland America and Westmark did not restore the Premises to its pre-fire condition and did not erect a temporary structure for Skagway to conduct its business on the Property. Accordingly, Skagway could not conduct its business during the 2013 and 2014 tourist seasons as it had previously intended, and as its was assured by Holland America and Westmark it would be able to do.

34. Skagway was still hoping to occupy the leased Property for the 2014 tourist season as well.

35. At no point after the fire did Holland America and Westmark notify Skagway or Mr. Chawla of their intent to terminate the lease, restore the Premises or Property to their pre-fire conditions, or erect any temporary structure for Skagway to conduct business at the Property.

36. In August 2014, Mr. Chawla met with Mr. Sager in person to discuss Mr. Chawla's offer to purchase the Property. Mr. Sager informed him that he had spoken to David Musselwhite, Vice President of Finance and Administration for

FIRST AMENDED COMPLAINT FOR
DAMAGES - 7

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 792-5230 ● (206) 452-0655 FAX

1  Holland America and Treasurer, Vice President of Westmark, about Mr. Chawla's
2  offer.

3      37.     Mr. Sager stated that he was directed by Mr. Musselwhite to instruct Mr.
4  Chawla to submit a formal offer for $500,000, in writing, to purchase the Property.

5      38.     Mr. Sager even instructed Mr. Chawla to note specific finance terms in
6  conjunction with the offer and, if he followed those directions, that Mr. Musselwhite
7  had informed Mr. Sager that "everything will be taken care of."

8      39.     In September 2014, Mr. Chawla wrote an offer for $500,000, as directed
9  by Mr. Musselwhite through Mr. Sager, to purchase the Property, but he received no
10  response to the offer.

11      40.     In October 2014, Mr. Chawla inquired about the status of Holland
12  America's and Westmark's response to his offer to purchase the Property.  He was
13  informed that the offer was rejected because Mr. Musselwhite did not approve of the
14  financing terms, which were the exact same financing terms that Mr. Musselwhite
15  instructed Mr. Chawla to include as part of his offer to purchase the Property.

16      41.     Upon hearing the reason for the rejection of his offer, Mr. Chawla
17  immediately offered to pay cash for the purchase of the Property.  Mr. Chawla received
18  no response to this amended offer.

19      42.     Shortly thereafter, and without any prior notice to Mr. Chawla, the
20  Property was advertised for sale and was listed far above the appraised market value.

21

22

23

24

FIRST AMENDED COMPLAINT FOR
DAMAGES - 8

IMPACT LAW GROUP PLLC
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 792-5230 ● (206) 452-0655 FAX

43.     Mr. Brena has been a licensed broker since 1999.

44.     Mr. Smith has been a licensed broker since 1984.

45.     On March 14, 2013, Mr. Brena and Mr. Smith engaged in a conversation about how to handle multiple offers made on a single property.  Upon information and belief, Mr. Brena and Mr. Smith may have been discussing the sale of the property at issue in this case.

46.     On or about September 18, 2014, Mr. Musselwhite told Mr. Smith to list the property.  He further informed Mr. Smith that Mr. Chawla had made the $500,000 offer.

47.     Mr. Smith listed the property for sale, and did not inform Mr. Chawla about the sale of the property.

48.     After seeing the advertisement, Mr. Chawla made a cash offer of $525,000 to Defendants to purchase the Property.

49.     Mr. Chawla made this offer through Ryan Williams, an associate of Mr. Smith who worked for The Carlton Smith Company.

50.     Mr. Williams advised Mr. Chawla to offer terms in the way of an earnest money contract.  He also notified Mr. Chawla that he represented HAP/Westmark in this transaction, and provided assistant to Mr. Chawla in this transaction.

51.     Mr. Williams asked and Mr. Chawla signed a "Alaska Real Estate Commission Consumer Pamphlet."  That document stated that Ryan Williams, not Carlton Smith, of the Carlton Smith Company represented the seller and he may assist the buyer, Mr. Chawla.

FIRST AMENDED COMPLAINT FOR
DAMAGES - 9

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 792-5230 ● (206) 452-0655 FAX

52. After making his cash offer, on October ~~12~~ 23, 2014, Mr. Chawla was informed that there was a competing offer, and that Mr. Musselwhite, as an agent of HAP, was seeking a "best and final offer."

53. On October 24, 2014, Mr. Chawla called Mr. Musselwhite and spoke to him directly on the phone, at which time Mr. Chawla informed Mr. Musselwhite of his long-term relationship with the Holland America, Westmark, the Property, and the leased Premises.

54. Mr. Chawla specifically detailed for Mr. Musselwhite the repeated and numerous assurances that were made to him by several Holland America and Westmark representatives that he would have the right of first refusal to purchase the Property.

55. During their telephone conversation, Mr. Chawla also informed Mr. Musselwhite that several Holland America and Westmark representatives stated that Mr. Chawla's offer would be considered favorably because of his long-term relationship with Holland America, Westmark, the Property, and the leased Premises.

56. During their conversation, Mr. Chawla also reminded Mr. Musselwhite, about Mr. Musselwhite's assurances and representations that Mr. Chawla's initial $500,000 offer to purchase the Property would be accepted by Holland America and Westmark.

57. During their conversation, Mr. Chawla also told Mr. Musselwhite that he intended to make a higher offer to purchase the Property even though it would be far above the assessed value of the Property.

FIRST AMENDED COMPLAINT FOR
DAMAGES - 10

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 792-5230 ● (206) 452-0655 FAX

58.     On October 27, 2014, Mr. Chawla made a cash offer of $551,000 to purchase the Property.  Mr. Chawla asked Mr. Williams to forward his offer to Mr. Musselwhite as he understood Mr. Williams to the seller's representative.

59.     On October 28, 2014, Mr. Smith, not Mr. Williams, made the recommendation to HAP to accept Mr. Brena's offer.

60      HAP/Wesmark rejected Mr. Chawla's offer.

61.     Mr. Smith did not disclose to Mr. Chawla his prior relationship with Mr. Brena and the apparent conflict of interest.

62.     Upon information and belief, Mr. Smith did not disclose to Mr. Musselwhite his prior relationship with Mr. Brena and the apparent conflict of interest.

63.     Mr. Chawla had several telephone conversations with Mr. Smith between October 28, 2104, (the date the Mr. Chawla's offer was rejected) and November 5, 2014.

64.     In those conversations, Mr. Smith informed Mr. Chawla that the sale of the property was final, and had concluded.  He led Mr. Chawla to believe that there was no reason to further contact Mr. Musselwhite with another offer.

65.     Mr. Chawla relied upon Mr. Smith's representations that he could not contact Mr. Musselwhite.  On November 6, 2014, Mr. Chawla contacted Mr. Smith to make an offer to purchase the property for $627,000, from the buyer of the property. Mr. Chawla did not know that Mr. Brena was the buyer of the property at that time.

66.     Mr. Smith informed Mr. Chalwa that he had spoken to Mr. Brena and he had rejected Mr. Chawla's offer.

67.     The purchase and sale agreement for the property was signed on November 5, 2014.

FIRST AMENDED COMPLAINT FOR
DAMAGES - 11

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 792-5230 ● (206) 452-0655 FAX

68.     Upon information and belief, the Property was sold for $552,000 to Mr. Brena, only $1,000 more than Mr. Chawla's offer. Mr. Brena bought the property through Alyeska Realty Advisors, Inc.

69.     Alaska State Statute 08.88.615 governs duties owed by real estate brokers in all relationships. The Statues states,

(a) Unless additional duties are agreed to in a written document signed by the person, and regardless of the type of licensee relationship in which the real estate licensee is acting, a real estate licensee owes the following duties to each person to whom the licensee provides specific assistance:
(1) the exercise of reasonable skill and care;
(2) honest and good faith dealing;
(3) the presentation of all written offers, written notices, and other written communications to and from the person in a timely manner regardless of whether the real estate is subject to an existing contract for sale or lease or the person is already a party to an existing contract to buy or lease real estate;
(4) except as provided in (b) of this section, the disclosure of all material information known by the licensee regarding the physical condition of real estate if the information substantially adversely affects the real estate or a person's ability to perform the person's obligations in the real estate transaction or if the information would materially impair or defeat the purpose of the real estate transaction;
(5) accounting in a timely manner for all money and other property received from or on behalf of the person;
(6) before the licensee provides specific assistance to the person, or when entering into a contract with the person to provide specific assistance, providing a copy of the pamphlet established under AS 08.88.685(b)(2) and produced under AS 08.88.685(c) that outlines the duties of the types of licensee relationships identified under AS 08.88.600;
(7) before the licensee provides specific assistance to the person, obtaining from the person a document signed by the person that discloses the licensee's relationship with the person;
(8) in addition to the document provided under (7) of this subsection, providing to the person when the person signs an offer in a real estate transaction handled by the licensee a written statement that states whether the licensee represents the buyer, represents the seller, represents the

FIRST AMENDED COMPLAINT FOR
DAMAGES - 12

IMPACT LAW GROUP PLLC
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 792-5230 ● (206) 452-0655 FAX

lessee, represents the lessor, or provides specific assistance to both the buyer and the seller or both the lessee and the lessor as a neutral licensee; the statement must be contained in a separate paragraph entitled "Licensee Relationships" in the contract between the buyer and seller or the lessee and lessor, or in a separate document entitled "Licensee Relationships."

**(emphasis added).**

70.     Upon information and belief, Mr. Smith did not inform Mr. Musselwhite of Mr. Chawla's offer to purchase the property for $627,000.

71.     Mr. Chawla is of East-Indian decent.   He speaks with a readily identifiable and distinct accent.

72.     The Property was sold to Mr. Brena, a Caucasian male.

73.     Mr. Brena owns several commercial properties, including and adjacent property, in Skagway, Alaska.

74.     Mr. Brena is currently planning to develop a multi-story, multi-purpose building on the property.

### III.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION – BREACH OF CONTRACT
(Against Holland America and Westmark)

75.     Skagway and Mr. Chawla re-allege and incorporate by reference each and every allegation set forth in paragraphs 1 through 74 as if fully set forth herein.

76.     The Lease Agreement is a valid and enforceable contract.

77.     Defendants have materially breached the Lease Agreement by, among other acts and/or omissions, not to restoring the Premises to the condition immediately prior to the fire damage or destruction in accordance with the Lease Agreement.

FIRST AMENDED COMPLAINT FOR
DAMAGES - 13

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 792-5230 ● (206) 452-0655 FAX

78.     As a direct and proximate result of Defendants' breaches of the Lease Agreement, Plaintiff has incurred damages in the amount of not less than $150,000, or in an amount to be proven at the time of trial, as well as attorneys' fees and costs.

## SECOND CAUSE OF ACTION – VIOLATION OF 42 U.S.C. § 1982
(Against Holland America, Westmark, HAP and Mr. Musselwhite)

79.     Mr. Chawla re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 74 as is fully set forth herein.

80.     Mr. Chawla repeatedly relied upon assurances of Holland America and Westmark representatives that his prior relationship with them, the Property and the Premises would be viewed favorably, and that Mr. Chawla "would be taken care of."

81.     Mr. Chawla relied upon Mr. Musselwhite's instructions in making an offer to purchase the Property in accordance with the financing terms requested by Mr. Musselwhite. Mr. Chawla subsequently amended his offer to pay for the Property in cash.

82.     Mr. Chawla made a higher cash offer of $525,000, an offer $125,000 higher than the appraised value of the Property of $400,000.

83.     When asked for a last and final offer, Mr. Chawla called Mr. Musselwhite to remind him of his and his company's repeated assurances that they would sell the Property to Mr. Chawla.  Mr. Chawla's identifiable and distinct accent was noticeable to Mr. Musselwhite during their telephone conversation.

84.     Mr. Chawla made an even higher cash offer of $551,000, an offer $151,000 higher than the appraised value of $400,000 of the Property.

85.     Mr. Chawla's offer to purchase the Property was rejected and, upon information and belief, Mr. Musselwhite, as an agent of HAP, made the decision to sell

FIRST AMENDED COMPLAINT FOR DAMAGES - 14

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 792-5230 ● (206) 452-0655 FAX

1    the property for $552,000, only $1,000 more than Mr. Chawla's offer to purchase the

2    Property.

3         86.    The Property was sold to a Caucasian property owner, instead of Mr.

4    Chawla, who is East-Indian with an identifiable and distinct Indian accent.

5         87.    Holland American, Westmark, HAP and/or Mr. Musselwhite violated

6    Mr. Chawla's right to purchase, lease, hold, and receive conveyance of real property.

7    This same right is enjoyed by Caucasian citizens. Defendants' actions are in direct

8    violation of 42 U.S.C. § 1982.

9         88. As a direct and proximate result of Defendants' discriminatory actions, Mr.

10   Chawla has suffered damages in an amount to be proven at the time of trial, as well as

11   attorneys' fees and costs.

12

13       **THIRD CAUSE OF ACTION – TORTIOUS INTEREFERENCE WITH A BUISNESS EXPECTENCY**
      (Against Mr. Brena, Alyeska Realty Advisors, Inc., The Carlton Smith

14       Company, LLC., and Mr. Smith)

15         89.    Mr. Chawla re-alleges and incorporates by reference each and every

16   allegation set forth in paragraphs 1 through 74 as is fully set forth herein.

17         90.    In 2014, when the property was on sale, Mr. Chawla had a relationship

18   with HAP/Westmark with an expectancy of purchasing the property, which would

19   result in a future economic benefit to Mr. Chawla.

20         91.    Mr. Smith, by and through the Carlton Smith Company, LLC, and Mr.

21   Brena, by and through Alyeska Realty Advisors, Inc., knew that such a business

22   relationship existed between Mr. Chawla and HAP/Westmark.

23

24

FIRST AMENDED COMPLAINT FOR
DAMAGES - 15

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 792-5230 ● (206) 452-0655 FAX

93.     Mr. Smith, by and through the Carlton Smith Company, LLC, and Mr. Brena, by and through Alyeska Realty Advisors, Inc., colluded and induced HAP/Westmark to terminate the business relationship.

94.     Mr. Smith's and Mr. Brena's interference with Mr. Chawla's business expectancy was for an improper purpose.

95.     Mr. Smiths's, by and through the Carlton Smith Company, LLC, and Mr. Brena's, by and through Alyeska Realty Advisors, Inc.,  conduct proximately caused damage to Mr. Chawla.

### **FOURTH CAUSE OF ACTION – FRAUD**
#### (Against Mr. Smith)

96.     Mr. Chawla re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 74 as is fully set forth herein.

97.     Between October 28 and November 5, 2014, Mr. Smith made the representations to Mr. Chawla that the property sale had concluded and there was no further need to contact Mr. Musselwhite or HAP/Westmark.

98.     Mr. Smith's representations were material as Mr. Chawla was considering making a superior offer to purchase the property.

99.     Mr. Smith knew his representations were false.

100.     Mr. Smith intended for Mr. Chawla to rely upon Mr. Smith's representations and not make any further offers for the property.

101.     Mr. Chawla had a right to rely upon Mr. Smith's representations as he was now dealing with Mr. Smith as HAP/Westmark's representative.

102.     Mr. Chawla did rely upon Mr. Smith's representations and did not make a much superior offer to HAP/Westmark.

FIRST AMENDED COMPLAINT FOR
DAMAGES - 16

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 792-5230 ● (206) 452-0655 FAX

103.     Mr. Chawla was damaged by Mr. Smith's representations as he did not obtain the property, and the incurring future economic benefits therefrom.

## FIFTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION
### (Against Mr. Williams and Mr. Smith)

104.     Mr. Chawla re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 74 as is fully set forth herein.

105.     Mr. Williams had a duty to disclose to Mr. Chawla that he was not truly representing the seller, HAP/Westmark, in the sale of property; Mr. Smith was the true seller's representative in this transaction.

106.     Mr. Williams did not disclose this information.  Instead, Mr. Williams signed a Alaska Real Estate Commission approved Consumer Pamphlet stating that he was "Representing the Seller/Lessor Only."

107.     Mr. Williams negligently failed to disclose to Mr. Chawla that Mr. Smith was the true representative for the seller.

108.     Mr. Chawla would have acted differently had he known that Mr. Smith was the true representative and would have conferred more with Mr. Smith regarding this transaction.

109.     Mr. Chawla was damaged as a result of Mr. Williams' failure to disclose the true representative as he was not able to secure the property through a fair bidding process.

110.     Mr. Smith had a duty to disclose to Mr. Chawla that he had a conflict of interest with Mr. Brena.  Mr. Smith had a duty to disclose to Mr. Chawla that he was a true representative for the seller.  Mr. Smith had a duty to disclose to Mr. Chawla that

FIRST AMENDED COMPLAINT FOR
DAMAGES - 17

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 792-5230 ● (206) 452-0655 FAX

the purchase and sale agreement was not perfected when Mr. Chawla expressed interest in making a superior offer.

111.    Mr. Smith did not disclose any of the above-mentioned information to Mr. Chawla.

112.    Mr. Smith was negligent in failing to disclose this information.

113.    The disclosure of the above-mentioned information would have cause Mr. Chawla to act differently in making his offers for buying the property.

114.    Mr. Chawla was damaged by Mr. Smith's failure to disclose the above-mentioned information as he did not secure the property through a fair bidding process.

### SIXTH CAUSE OF ACTION – VIOLAITON OF ALASKA STATUTE GOVERNING REALS ESTATE BROKERS, ALASKA STAT., SEC. 08.88
(Against Mr. Williams and Mr. Smith)

115.    Mr. Chawla re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 74 as is fully set forth herein.

116.    Mr. Smith and Mr. Williams are real estate licensees governed by Alaska Stat., Sec. 08.88.

117.    Mr. Smith and Mr. Williams are aware that they have a duty to each person to whom they provide specific assistance regardless of the type of relationship.

118.    Mr. Smith and Mr. Williams did not fully disclose the nature of their relationship with Mr. Brena and their true representation of HAP/Westmark.   Mr. Smith did not disclose to Mr. Chawla that the Purchase and Sale Agreement was not perfected when whey spoke between October 28, 2014 and November 5, 2014.  This conduct was not honest and they did not deal in good faith

FIRST AMENDED COMPLAINT FOR
DAMAGES - 18

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 792-5230 ● (206) 452-0655 FAX

119.   Mr. Smith knew that Mr. Chawla intended to purchase the property for $627,000.

120.   Mr. Smith's and Mr. Willams' above mentioned conduct was a violation of Alaska Stat., Sec. 08.88 et. seq.

## SEVENTH CAUSE OF ACTION – VIOLAITON OF 42 U.S.C. § 1982
### (Against Mr. Smith and Mr. Brena)

121.   Mr. Chawla re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 74 as is fully set forth herein.

121.   Mr. Chawla repeatedly relied upon Mr. Smith's assurances that the property transaction was finalized and Mr. Chawla should not deal with HAP/Westmark anymore.

122.   Upon information and belief, Mr. Smith and Mr. Brena colluded to obtain the property at the most favorable price for Mr. Brena, and to eliminate the chances of Mr. Chawla purchasing the property.

123.   Mr. Chawla relied upon Mr. Smith's representation and made the offer of $627,000.

124.   Upon information and belief, Mr. Smith did not forward this offer to HAP/Westmark.

125.   Upon information and belief, HAP/Westmark, the property owner at the time, did not have an opportunity to consider Mr. Chawla's offer.

126.   Upon information and belief, as a result of Mr. Smith and Mr. Brena's collusion, the Property was sold to Mr. Brena, a Caucasian property owner, instead of Mr. Chawla, who is East-Indian with an identifiable and distinct Indian accent.

FIRST AMENDED COMPLAINT FOR
DAMAGES - 19

IMPACT LAW GROUP PLLC
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 792-5230 ● (206) 452-0655 FAX

87.     Mr. Smith and Mr. Brena violated Mr. Chawla's right to purchase, lease, hold, and receive conveyance of real property.  This same right is enjoyed by Caucasian citizens.  Defendants' actions are in direct violation of 42 U.S.C. § 1982.

88.     As a direct and proximate result of Mr. Smith's and Mr. Brena's discriminatory actions, Mr. Chawla has suffered damages in an amount to be proven at the time of trial, as well as attorneys' fees and costs.

## IV.  RESERVATION OF RIGHTS

Plaintiffs reserve the right to add additional parties to this lawsuit as well as make further claims and/or amend claims set forth herein as may be warranted by discovery.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.     For judgment on all claims in favor of Plaintiffs and against Defendants;

2.     That Skagway be awarded damages as a result of breach of Lease Agreement by Defendants' actions, in an amount to be proven at the time of trial;

3.     That Mr. Chawla be awarded compensatory damaged as a result of Defendants' violations of 42 U.S.C. § 1982 and applicable Alaska statutes, in an amount to be proven at the time of trial;

4.     That Mr. Chawla be awarded appropriate attorneys' fees as a result of Defendants' violations of 42 U.S.C. § 1982, as permitted by 42 U.S.C. § 1988, and applicable Alaska statutes;

5.     For an award of attorneys' costs and attorneys' fees pursuant to the terms of the Lease Agreement and/or to the fullest extent allowed by contract, law, and equity; and

FIRST AMENDED COMPLAINT FOR
DAMAGES - 20

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 792-5230 ● (206) 452-0655 FAX

1    6.    For such other and further relief as the Court finds just and equitable.

2                        **VI.  JURY DEMAND**

3        Pursuant to Federal Rule of Civil Procedure 38, Skagway and Mr. Chawla

4   demand a jury on all claims so triable.

5        DATED:  This 25th day of September, 2015.

6
                                    **IMPACT LAW GROUP PLLC**
7
                                    By:  _/s/ David F. Betz_____
8                                        _/s/ Sumeer Singla_____
                                    David F. Betz, WSBA #28518
9                                   Sumeer Singla, WSBA #32852
                                    Impact Law Group PLLC
10                                  1325 Fourth Avenue, Suite 1400
                                    Seattle, WA 98101
11                                  Telephone: (206) 792-5230
                                    Fax: (206) 452-0655
12                                  E-mail: david@impactlawgroup.com
                                            sumeer@impactlawgroup.com
13                                  Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

FIRST AMENDED COMPLAINT FOR                  **IMPACT LAW GROUP PLLC**
DAMAGES - 21                                 1325 FOURTH AVENUE, SUITE 1400
                                             SEATTLE, WASHINGTON  98101
                                             (206) 792-5230 ● (206) 452-0655 FAX